Thank you. May it please the Court, Brian Ellickson for the appellant Misty Smartt in this action. I will endeavor to reserve three minutes for rebuttal. Misty Smartt filed an application for Social Security disability benefits. That application was denied by an administrative law judge who found that Ms. Smartt had a number of severe impairments but retained the ability to perform work in the national economy. That decision is flawed in a number of respects. By way of outline, flawed in the evaluation of Ms. Smartt's own testimony and reporting to the agency. Also flawed in the administrative law judge's evaluation of both examining and treating physician opinions. Ms. Smartt I know you have a lot of issues, but in my mind I sort of think that they fall into a couple of categories. One is whether the ALJ properly weighed the competing physician opinions and two, whether the ALJ properly discounted Smartt's subjective pain testimony. Are those kind of the two general areas? I think so, Judge. I think those are probably the two primary issues here. The physician argument, I'll start with that Judge since you brought it up first, but the physician argument is a bit more nuanced. We have two physician opinions that are really at issue here. One is that of the examining physician, Dr. Gordon, whose examination was ordered between the first and second administrative law judge hearings. And three opinions from a treating physician, a Dr. Karendish, who worked at the primary care and pain management clinic where Ms. Smartt received a lot of care. Dr. Gordon's opinion, and I'll start with Dr. Gordon's, is interesting not because of his ultimate opinion, but because of a number of inconsistencies in the report and the opinion itself. And those inconsistencies are really important here. Dr. Gordon, particularly with the perspective use of an assistive device in Ms. Smartt's need for SAME, says at various points in his report and his opinion that Ms. Smartt needs a walker, that she needs it all the time for pain and for balance, that she needs a cane, that she needs an unnamed assistive device, and that she can walk 50 feet without a cane. So the report and the opinion is all over the map with regard to that one issue. Well, is it? I mean, as I recall, where he says that she needs a walker all the time was under the category in his report about history. So in the inference there that this was what she was claiming, as opposed to his diagnosis that she could walk 50 feet or so without advice was in his own finding. Respectfully, Judge, I disagree a bit. There are obviously a number of sections that require extensive claimant input, like the But this was in a specific section dealing with the assistive device. He opined that it was medically necessary. He opined that she'd been using it in 2016 and was, in fact, provided with records that documented her use in 2016. And the issue is dispositive because of the vocational expert's testimony at the second hearing. The vocational expert testified that if one were to require an assistive device that required for use withstanding, essentially, you had to hold on to the assistive device while standing. So can you give us, maybe get a little more specific, considering that there is a deferential standard of review, what specific piece of evidence would you point to to demonstrate that the ALJ unreasonably credited Dr. Gordon's findings and interpretations of your client's medical history? What's unreasonable, Judge, is that there is this inconsistency in Dr. Gordon's report. Ms. Smart asked for Dr. Gordon to be available to testify regarding that inconsistency. Counsel for Ms. Smart at the second ALJ hearing noted the inconsistency, and the judge essentially brushed it off. He gave substantial weight to Dr. Gordon's opinion, didn't mention the inconsistency in his decision, found that having Dr. Gordon be available to testify or provide further input wouldn't provide additional clarification to the case. I mean, would it be accurate to say that the ALJ seems to have interpreted Dr. Gordon's opinion the way that Judge Gilman was sort of, because the ALJ, if I remember, did credit the idea that you could go 50 feet yards with a cane, I think. With a cane, Judge, yes. So that seems to, would it be accurate to say that that seems to be the interpretation that the ALJ gave to the opinion, or do you think that the ALJ sought some other way? No, I think that's the interpretation that he gave. It's in fact reflected in his ultimate residual functional capacity assessment. But given the glaring and obvious nature of the inconsistencies within the report, further clarification was requested by Smart. It was, it would have, I think it was erroneous to deny that opportunity. And the ultimate adoption of that opinion doesn't then rest on substantial. What do you do with the, you know, as far as the visitations, if I recall correctly, it seems like when Mr. Smart would show up for a, would show up for certain types of appointments, would have a walker, but there's a lot of just the treatment records where there's no record of having a walker or any sort of assistance, and also not only is there no record, but doesn't, like maybe if there's a check, they don't mention it at all. Right. So that doesn't look good in the sense of it seems like maybe Mr. Smart is showing up with a walker when, for certain types of appointments, but not other appointments. Am I misunderstanding the record in that regard? No, I think it's a valid concern, Judge. I think Dr. Gordon is obviously, as a social security consultant examiner, is gearing his opinions towards the needs of the workplace over the course of an eight-hour day. You know, I think there are notations in the record that Ms. Smart at times did not need to have an assistive device with her, but that doesn't absolve the judge of at least addressing the inconsistencies in Dr. Gordon's opinion. If I might move to Ms. Smart's testimony, unless there are any other questions on. No, no, and I apologize. I think I said Mr. Smart, and I apologize. But and then the, as far as the treating versus examining, this is an odd case to me in that most of the time, you know, the treating, examining, examining, you feel like they just see the person for a little bit. The treating is ongoing treatment. Am I right in thinking that the treating physician here, Smart actually most of the time saw a nurse practitioner, right? I only saw the treating physician three times, and they were all related to getting a, for providing an opinion on it. And so, in some ways, it seems a little odd to treat that physician as a treating physician when it's not clear to me that that physician was ever actually treating anything. It was more like a consultive, it was like her personal consultive physician in order to find the forms. Yeah. No, and I agree, Judge. I would say that it's notable that the judge himself considered Dr. Karendish to be a treating physician. He says so at page 24 of the administrative record. So he himself apparently concedes that this is a treating physician. I think what's notable about Dr. Karendish's opinions and the judge's treatment of them, and I would agree that Ms. Smart was seen on three occasions to provide, for Dr. Karendish to provide evidence on those occasions, and I don't see any other evidence of treatment with that doctor. Well, the ALJ said that it wasn't a normal doctor-patient relationship, right? And your client basically said she was only there three times to have the doctor sign the forms. Correct. Correct. And that's, those are the treatment visits from that provider, obviously, and numerous other treatment visits with that same facility for purposes of primary care and pain management. But Dr. Karendish examined Ms. Smart on three occasions and provided three opinions of what he thought she could and could not do. The judge found, in evaluating that opinion, the judge didn't find inconsistency in those reports themselves. He found inconsistency with the overall evidence of record, and what's lacking is any sort of explanation. He says, I find this, I'm giving this little weight because it's inconsistent with the medical evidence, as I've described previously in the decision. And he has a summary of the medical records, but there's very little connection between the summary, which includes numerous positive findings in addition to negative findings, with the actual opinions of Dr. Karendish. You know, the ALJ, for example, Dr. Karendish at one point says that Ms. Smart would be frequently absent from work. The judge doesn't address how the objective record contradicts that statement. He gives an, Dr. Karendish gives an opinion that she'd be off task from work, from work activity due to pain. The judge doesn't address how the objective records contradict that. Just because our time's limited, I wanted to take you to a waiver question that I have. Have you waived arguments relating to the procedural aspects of the hearing before the ALJ? Can you point me in the record citation where you raised these arguments before the district court? And if you didn't, what exception to the waiver bar do you contend applies here? So in terms of the procedural aspects, Judge, clarification from you, obviously, the commissioner alleged waiver on a couple of issues. Alleged waiver is that Dr. Gordon, that was addressed at the district court below. There were allegations of waiver as to some of the vocational expert testimony, inconsistencies in the vocational expert testimony were raised in the briefing below. There were some questions in the opening brief about, you know, whether three days or ten days were required for the production of evidence. I don't think that's a material issue here. It wasn't raised in the court below. So that procedural issue, Judge, I don't think I would concede that there was a waiver, whether it was material that three days versus ten days were provided for the production of evidence to go to Dr. Gordon. If I can move briefly to Ms. Smart's testimony, I know, Judge Callahan, you mentioned that in your opening. The judge was required to offer clear and convincing reasons to discount that testimony. Ms. Smart provided evidence to show that her impairments could reasonably be expected to cause her alleged symptoms, and so in response, the judge would have to provide clear and One of the things he cited, too, was Ms. Smart's activities of daily living, and these activities of daily living included things like playing board games, doing crafts, going shopping, benign activities without any connection as to how they might contradict her testimony or be consistent with an eight-hour day. The judge, without any citation to evidence, states in the decision that the physical and mental capabilities requisite to providing many of the tasks described above, going shopping, playing board games, driving a child, replicate those necessary for obtaining and maintaining employment. There's a statement of those facts. There's a conclusion, but there's no connection between the two, and we are all left to guess as to how going shopping or playing a board game offers the capabilities requisite to maintain full-time employment. The commissioner points to a recent case, Kaufman, as supportive of the ALJ's rationale, but Kaufman actually says this was a 59E motion that was filed after a district court decision. Kaufman actually says the ALJ connected which activities were inconsistent with which testimony, and that was a valid basis to discount a claimant's testimony in that particular matter. That connection hasn't happened here, and I don't think we could find in the records where that connection has happened. I see my time. Well, no, I'll let you save your time for rebuttal. You don't have to, Judge. So when I read, this actually, and maybe they use like a template or something for these opinions, the commission, but we see this fairly often, and I sort of read those as sort of, they're not completely relying on that as the main reason or certainly not the only reason. They're saying it's inconsistent with the objective medical evidence, and then they always say, it seems like there's always a section that has like, you know, here's their daily life activities that the person admitted to. Is that, am I reading that correct to say they're sort of, you might call it make-weight or whatever, but I don't know what to do with that. I'm not sure, why does it matter so much if that's not, if that isn't really the driver of the ALJ's opinion, I guess? If the ALJ's just adding that and saying these are things that are, I also think are inconsistent, but really they're mainly relying on the objective medical evidence as being inconsistent, what do we do with it, even if we were to agree with you, I guess is what I'm asking. Sure. So I think the reason these other issues are proffered by the judges is because simple conflict with objective data is not in and of itself going to be enough to discount somebody's testimony. There's a recognition by this court that pain can cause limitation in excess of what the objective data might indicate. And in this case, that's particularly salient because the severe impairments are all related to pain. Cervical spine pain, right lower extremity pain, chronic pain syndrome. And so there seems to be an acknowledgment that the objective data may not demonstrate that. Now, the judge says that one- Let me make sure I'm understanding you correctly. You're saying that in a case like this, because the pain thing could be subjective, the pain aspect obviously could and would be subjective in at least some sense, that you never, that you could not, that government could not prevail based on objective medical evidence, that that would always be error to only rely on that? To only rely on the objective medical data would be erroneous, Judge. What's your authority for that? Judge, you have to forgive me. I think it's the Bursch case, I think, where the Bursch case says that you can't reject a claimant's subjective complaints based solely on lack of medical evidence to fully corroborate the alleged severity of the pain. Correct. And we get that quote a lot in these cases. But I don't, basically, that seems, sounds to me to be saying, we get it, we get that quote a lot and it's used the way I think you're using it. That you can't only rely on objective. But I don't know that I read that quote to say that. It's saying that you can't say, well, because of your subjective complaints aren't, your subjective complaints aren't fully corroborated by the objective medical evidence, you lose. I don't see that the ALJ did that here. And Judge, respectfully, as I know I'm going over time, but I want to address your question. You know, what's interesting here is even if we were to assume that, I don't necessarily concede that, but even if we were to assume that, the judge here said that he was discounting the claimant testimony, I'm going to read from page 21 of the administrative record. The claimant's statements concerning the intensity, persistence, and limiting effects of these systems are not entirely consistent with the medical evidence. That entirely reads as though the judge is requiring absolute corroboration. That's one way to read that. I agree. We get this argument. The reason I'm actually really curious about this is, we get, we get this argument all the time because that same language seems to be used by ALJs and it's not that helpful because it could mean what you're saying it means, but it could also, I think, be read to mean that it's not, the two aren't consistent. There's subjective medical evidence that seems to point in one direction, and there's subjective pain testimony that points in the other direction. And it's not clear to me why an ALJ can't, I mean, what else can an ALJ rely on unless you have a picture of the person, you know, at the local trampoline park or something like that? Like, what else can an ALJ rely on if not the objective medical evidence? A number of things, Judge. We've talked a lot about, you know, for example, activities of daily living. You know, the case Molina versus Astru, this court found that activities of daily living Activities of daily living is kind of just a smaller version of the trampoline park. Like it's basically saying, you say you can't do this, but like, we saw you on the road. We saw you jump roping in your living room. You know, I mean, I, I mean, seriously, I, this is actually kind of an important thing because I think your position is that the objective medical evidence isn't, your position seems to be that you can't, you can't discount somebody's subjective pain testimony by the objective medical evidence. And if that were really true, I don't know, that's a pretty, that's pretty far reaching, I think. I don't think, and again, please cut me off if, if you deem necessary, but, you know, this court has said that disability benefits are not there for the taking. You can't just say you're disabled and get them. And so that, I think that's the, the, the concern that you have, Judge. And I certainly understand that. And this court has said that, you know, objective data can be considered, but it can't be considered in and of itself. And in a case like this where, you know, the judge's other rationales, you know, activities of daily life. So that's the way you want us to interpret it. I think that's the, and so we'll, we'll discuss that. So we've taken you way over time. If after I hear from the other side, if I think I might give you one minute for rebuttal. Thank you, Judge. Thank you. Thank you, Your Honor. I might, if we have questions. All right. We'll hear from the attorney for the appellee. Good morning. Good morning, Your Honors. Sean Mody on behalf of the Acting Commissioner of Social Security. So there's no dispute here that the claimant experienced severe physical impairments that significantly affected her ability to work. Ultimately, the ALJ reasonably found that the claimant did not fulfill her burden of findings. A well-supported examining physician's opinion, the claimant's treatment history and claimant's submissions about her daily, day-to-day activity painted a more measured view of the claimant's functioning than the dire claims from the claimant and one of her physicians. This evidence ensured that the ALJ's disability, non-disability finding here cleared the low substantial evidence bar and the claimant's flurry of forfeited arguments, unsupported assertions and characterizations of the record do not justify remand. So I want to turn first to the issue of Dr. Gordon because it's just working in terms of the same order that my colleague did and the question of whether there was any kind of ambiguity in his statements. I think there's an attempt to create an ambiguity where none really exists because if we look at the consultative examination report, and so it's sort of divided into two portions as Judge Goldman noted, that there's an initial portion that contains like a narrative summary where they're taking on board what the claimant is reporting. Then we also have Dr. Gordon's own clinical observations and that has all been followed by a medical source statement portion and that medical state source statement portion is really the key part of that overall report because that is his statement about what the claimant could do despite her limitations. So that's really the crux of the issue here and in that report, Dr. Gordon plainly stated that the claimant could walk without a cane up to 50 feet, but only needed the cane as an assistive device, that she didn't need a walker and Dr. Gordon was asked point blank in that form, I think on page 902 in a checkbox form, he said, can this individual walk without a walker? And he said, yes. And so I think it's not valid to try to restrew that as somehow an endorsement of the claimant's need for a walker. I think indeed, as Judge Gilman noted, the reference to 2016 underscores that this was the claimant's own reporting because Dr. Gordon only saw the claimant in the fall of 2018 and wasn't her physician. So he'd have no way of knowing what she was doing in 2016 unless it was her herself who reported that. As for the sort of broader point about whether Dr. Gordon's evidence about the claimant's ability to perform a range of sedentary to light work, that being substantial evidence for the ALJ's non-disability finding, under this court's precedent, Tornapetian and Thomas, this evidence does qualify as substantial evidence because the rest is upon his own independent examination. It sounds like Dr. Gordon observed the appellant could sit comfortably for 30 minutes. Is this really inconsistent with the suggestion by Dr. Karendish that she should alternate position every one to 20 minutes? I don't know, how much does the simple form filled out by Dr. Karendish tell us? Well, I think there's sort of two points there, first being Dr. Gordon extrapolated his clinical observations to his opinion, and in his opinion, he mirrors the ALJ in saying that the claimant could sit for a total of four hours in a workday and up to two hours at a time. And so that was ultimately his conclusion. Dr. Gordon's conclusion about what the claimant could do was consistent with what the ALJ eventually found. And as for Dr. Karendish, I think the basis for why he said that, I think is a mystery. And I think that's one that Judge Van Dyke sort of touched on because of the kind of unique relationship between the claimant and Dr. Karendish and where basically she was going to Dr. Karendish. I did see him three times, and so isn't that enough to have a render an accurate opinion? I think maybe theoretically, but not based on this record, Your Honor. And let me explain why because, well, first of all, I think to the dynamic there, I think the claimant did make it clear that she was going to Dr. Karendish simply to obtain some kind of endorsement of her claims of disability because I think at one such examination, she refused to have a routine check of her vital signs because she made it clear that she just simply wanted the paperwork. She wasn't really there for a visit. But beyond that, Dr. Karendish in the physical examination portions of his various reports, he notes that claimant was in no acute distress, that she was able to ambulate without assistance, and that she had, I think, normal neurological functioning, no abnormalities in her extremities, which are findings consistent with what all of her other sort of treating and examining physicians, including Dr. Gordon, obtained. So given that he obtained pretty benign findings regarding her physical functioning, the basis for his conclusions remains sort of completely up in the air, and that's what the ALJ pointed out, that there's really no objective basis for what he's saying because even he himself obtained routine findings that were in line with what Dr. Gordon and others obtained regarding what the claimant's physical capacity. I think their relationship and her going to Dr. Karendish simply just to obtain disability paperwork, I think that's the context in which we can view the ALJ's rejection of that opinion because otherwise, as the ALJ pointed out, there's really no objective basis for why he said what he said. What about Mr. Ellickson's point that there's no nexus or there's no reasoned connection by the ALJ between her activities of daily living and that being a reason to dispute the factual conclusion of the treating physician? Yes, Your Honor. So to get to the broader discussion of the claimant's symptom testimony, given that I think the parties really aren't, for the purpose of this argument, not disputing whether there was objective corroboration for her complaints, the ALJ also provided other reasons for why he rejected her symptom testimony, one of which was the activities of daily living. And I think Mr. Ellickson focuses on the last sentence of the paragraph but ignores the second sentence, which says that where the ALJ is saying that what claimant said she can do despite her impairments kind of goes beyond her allegations of disabling symptoms and limitations. And I think in terms of the connection itself, I think we can kind of look at it sort of temporally in the decision because in the preceding sort of pages, so at the top of sort of page 21 of the record and the previous page, page 20, we have the ALJ summarizing the claimant's various complaints. And then that is then followed by a statement saying that I find these symptoms inconsistent with the claimant's, you know, objective medical evidence, her treatment history and her daily activities. And then there's a subsequent mention of the daily activities. And so I think that, you know, as this court is held in Molina, you know, when this court can reasonably discern the agency's path, you know, it should affirm. And I think looking at all of that in its entirety gets you to that connection, Your Honor. And getting to the point about the symptom testimony, because I think we focus kind of a fair bit on the daily activities and the ALJ's finding here that, you know, it wasn't simply just that these activities had to translate to full-time work. You know, as this court is held in Molina and Valentine, even if a claimant's activities are limited, they can still be useful to contradict a claimant's allegations of a totally debilitating impairment. And that's what the ALJ did here. That even if she did have, you know, an overall kind of restricted functioning, she was still able to care for herself, care for her daughter, shop, drive, perform white household chores, engage in some kind of hobbies and interests, which undercut her claims of basically being unable to do anything during the course of a day, which she says she spent most of the day lying down and was unable to perform any kind of basic physical activities. And that sort of is inconsistent with what she admitted that she was actually able to do. And on top of the daily activities... Did the ALJ determine that she's a malingerer? No, Your Honor. There was no finding of malingering here. Does he find her not creditable? Well, he finds her symptom testimony not entirely persuasive. I don't think... The ALJ here is focusing not on her sort of personal credibility, but whether her allegations of disabling symptoms and limitations should have been accepted. And the ALJ here probably discounted her claims, her subjective claims of disabling symptoms and limitations. Well, it's a little bit like you're saying someone's a little bit of a hypochondriac. I mean, you're saying, okay, I believe you. She slipped and fell on the... I believe you. I believe you that something's wrong. But I don't believe it really hurt that much, or I don't believe that it really is that bad, which I think you can do with... Someone doesn't have to be a malingerer. Someone doesn't have to be a liar. But ALJs are in a position to decide, well, does it really... Are you as limited as you say you are? Does it hurt as much as you say? Is it interfering with your life as much as you say? I think you can disagree, but I think it's... If I understand you correctly, she wasn't a malingerer. She wasn't found incredible. It's just how... What can an ALJ do with... But the ALJ obviously didn't accept everything that she said, hook, line, and sinker, because if the ALJ believed that she could do nothing, then she probably should have won, right? Yes, Your Honor. That's exactly it. I mean, I think the ALJ makes it clear that he wasn't discounting everything she said because at the end of the day, her functional capacity is very restricted. I mean, it is essentially sedentary work. And so it's clear that he acknowledged her ongoing complaints of pain. But as you noted, Your Honor, the ALJ just didn't find that her complaints were consistent with the finding of disability, and there were reasons why her subjective claims didn't justify finding disability here. Well, sometimes, though, you can almost see how it could be no good deed goes unpunished. If you try really hard and you push through things, then it's said, well, you really can do more than you say, even if it really hurts and you're really trying, as opposed to someone that just is a total malingerer or someone that just says, I'm not even going to try. I guess theoretically, yes, Your Honor. I don't think there's really any indication of the ALJ sort of penalizing the claimant for engaging in these activities or somehow making any kind of value judgment about that. It's just simply pointing to the activities as being inconsistent with their allegations of disability. And I also want to note as well that on top of the daily activities, because I know that we've kind of focused a lot on that, the ALJ also highlighted the treatment history. And I think this is particularly important because that discussion is found throughout the decision and that the ALJ highlights that she had her improvement in her symptoms following her July 2015 surgery, her ongoing improvement with medication. I think the ALJ's decision and the record as a whole documents that the claimant repeatedly admitted that she had improved pain, improved quality of life, improved functioning, all without adverse side effects. The ALJ pointed out the lack of adverse side effects that accompanied her ongoing improvement. And so I think that was also a key fact that the ALJ relied upon in finding her subjective complaints not fully persuasive. And that coupled with, of course, Dr. Gordon's opinion about her ability to work and the objective clinical findings about her ability to walk without assistance or walk without a walker, her normal strength, intact range of motion, normal neurological functioning, lack of abnormalities in her extremities that you would expect with somebody who was disabled. There was no finding of atrophy or muscle wasting, which this court has found in the past to be sort of typically associated with the presence of a disabling impairment. None of that was that none of that was present here. And so all of this entire combination of evidence is really what is underlying the ALJ's non-disability finding here, Your Honors. So. You've got a couple minutes left. Yeah. This whole BERSH issue that you heard me talking about at the end of that, it seems to me we get some sometimes in these social security cases we get folks will cite the BERSH and then say essentially you can't rely on objective medical evidence to as the ALJ can't rely on objective medical evidence as undercutting subjective pain testimony. What is your interpretation of what BERSH requires? What is what line is it drawing for us? So, Your Honor, I think this court's precedent along with the agency's regulations, and I think that the relevant agency regulation here on this point is 20 CFR 4.1529C2. And that in that regulatory site, it mentions that and in the agency's rulings as well, it mentions that the ALJ does have to compare the claimant's subjective complaints to the objective medical evidence. So that is a factor that is used in evaluating symptom testimony, but it cannot be the only factor. And so I guess in this instance, when evaluating claimant symptom testimony, it has to be that plus one, I guess, as to maybe put it the way that the objective medical evidence is a factor. But if that were the sole factor cited, that wouldn't be enough under the agency's regulations. So what does the plus one end up being? Here it could be the activities of daily living. What else counts as the plus one? So as I mentioned earlier, Your Honor, the improvement in treatment as well. That is a valid factor in the agency's regulations as well as under this court's precedent. I think we cite to Warre. There's another case, Wellington as well, where this court notes that an improvement in the claimant's symptoms is a valid basis for discounting their testimony. And that's precisely what the ALJ did here. I think you have no time. No time, Your Honor. So thank you. No, thank you very much. We ask that this court uphold the district court's order affirming the commissioner's final decision in this case. Thank you. Okay, thank you. If either of my colleagues have any questions they want to ask of appellant, then I'll give you a minute. But if you don't, it looks like our questions are answered. So thank you both for your argument today. This will conclude argument in this case. It will be submitted. And this court is in recess until tomorrow at 830 a.m. tomorrow.
judges: Gilman, CALLAHAN, VANDYKE